IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRISTIN BORN and JESSICA CHAUHAN, individually and on behalf of all others similarly situated, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | Case No. 2:20-cv-00107 |
| v. | Chief Judge Robert J. Shelby |
| PROGREXION TELESERVICES, INC., | Magistrate Judge Daphne A. Oberg |
| Defendant. | |

This case concerns alleged violations of the Fair Labor Standards Act of 1938 (FLSA). Plaintiffs Cristin Born and Jessica Chauhan filed this putative FLSA class action against Defendant Progrexion Teleservices, Inc., and a number of additional plaintiffs have since opted-in to this action.  Before the court are Progrexion's Motion to Compel Arbitration[1] and Progrexion's Motion to Dismiss For Lack of Subject Matter Jurisdiction.[2]  For the reasons explained below, Progrexion's Motion to Compel Arbitration is GRANTED and Progrexion's Motion to Dismiss is DENIED IN PART as moot with the remainder converted to a motion for summary judgment under Rule 56.

## BACKGROUND

Since 2011, Progrexion has used third-party software to host its onboarding portal for new hires.[3]  As part of that process, new hires electronically review and sign an "Employee Non-Competition, Non-Solicitation, Confidentiality and Inventions Agreement" (the Agreement).[4]

---

[1] Dkt. 21.

[2] Dkt. 20.

[3] Dkt. 20 at 9.

[4] Dkt. 20 at 10.

1

The Agreement contains a section related to arbitration.[5]  The Agreement provides in relevant part,

> Employee agrees that any dispute or controversy between Employee and Employer, including but not limited to any and all controversies, claims, or disputes with Employer or any other employee, officer, director, shareholder or benefit plan of Employer, arising out of, resulting from, or relating to this Agreement, or the interpretation, construction, performance, breach, termination, or validity hereof, or the compensation, promotion, demotion, discipline, discharge or terms and conditions of Employee's employment, shall be settled by binding arbitration to be held . . . in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association in effect on the date of the demand for arbitration.[6]

The Agreement specifies that disputes subject to binding arbitration include "any and all claims, demands, or actions brought under . . . the [FLSA]."[7]  The Agreement requires the employee to pay any arbitration filing fees up to $350 and provides that "[t]he prevailing party, if any, shall be entitled to payment by the other party of its actual attorney fees . . . [and] costs . . . as determined by the arbitrator."[8]

The Agreement also provides,

> Employee understands that each party's promise to resolve claims by arbitration in accordance with the provisions of this Agreement, rather than through the courts, is consideration for other party's like promise. Employee further understands that he or she is offered employment and continued employment in consideration of his or her promise to arbitrate all relevant employment-related disputes and/or claims.[9]

Of the plaintiffs implicated in Progrexion's Motions, all but two—Aja Chatmon and Jessica Chauhan—electronically signed the Agreement during the onboarding process.  Chatmon

---

[5] *See*, *e.g.*, dkt. 20-1 at 17–19.

[6] *See*, *e.g.*, dkt. 20-1 at 17–18.

[7] *See*, *e.g.*, dkt. 20-1 at 18–19.

[8] *See*, *e.g.*, dkt. 20-1 at 18.

[9] *See*, *e.g.*, dkt. 20-1 at 18.

and Chauhan did not check the signature box on the Agreement during onboarding.[10]  The onboarding software does show, however, that both Chatmon and Chauhan accessed and reviewed the Agreement during onboarding, even though no signature was recorded.[11]

On December 7, 2018, Plaintiffs' counsel filed a complaint in the United States District Court for the District of Arizona, asserting FLSA claims against Progrexion and seeking to certify a nationwide class action (the Arizona Action).[12]  On April 18, 2019 and July 2, 2019, the Arizona Court ordered the Arizona Action plaintiffs to arbitration and dismissed the case.[13]

Before instituting arbitration, Plaintiffs' counsel and Progrexion's counsel participated in mediation in November 2019.[14]  When mediation proved unsuccessful, Plaintiffs' counsel requested arbitration agreements for the claimants it then represented—including a number of plaintiffs in this action.[15]  Progrexion began producing the relevant arbitration agreements, the last of which was produced on April 19, 2020.[16]

On February 19, 2020, Plaintiffs filed this putative collective class action against Progrexion, alleging violations of the FLSA.[17]  At least 31 plaintiffs have filed opt-in forms and consented to join this litigation.[18]  On April 20, 2020, Progrexion filed two motions.  First, Progrexion filed a Motion to Dismiss For Lack of Subject Matter Jurisdiction, arguing the court lacks subject matter jurisdiction to adjudicate the claims of four plaintiffs (the Untimely

---

[10] Dkt. 20 at 13.

[11] Dkt. 20-1 at 6–7.

[12] Dkt. 20 at 9.

[13] Dkt. 20 at 9.

[14] Dkt. 36 at 2.

[15] Dkt. 36 at 2–3.  The Plaintiffs in this action were not compelled to arbitration in the Arizona Action.

[16] *See* dkt. 36 at 3.

[17] Dkt. 2.

[18] Dkt. 20 at 8.

Plaintiffs) in this action.[19]  Second, Progrexion filed a Motion to Compel Arbitration, asking the

court to compel 29 plaintiffs (the Arbitration Plaintiffs) to arbitration—including three of the

Untimely Plaintiffs named in the Motion to Dismiss.[20]

## ANALYSIS

The court begins with Progrexion's Motion to Dismiss, which is styled as a Rule 12(b)(1)

motion asserting lack of subject matter jurisdiction.  The court concludes, however, that it must

be construed as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be

granted.  Having so concluded, the court—at Progrexion's request—turns to resolving the

Motion to Compel Arbitration before returning to the Motion to Dismiss.

## I. PROGREXION'S MOTION TO DISMISS IS PROPERLY CONSTRUED AS A RULE 12(B)(6) MOTION

Progrexion's Motion to Dismiss argues the court lacks subject matter jurisdiction over the

claims of the four Untimely Plaintiffs, three of whom are also named in Progrexion's Motion to

Compel Arbitration.  Progrexion asks the court to consider its Motion to Dismiss with respect to

those three plaintiffs only if the court does not compel them to arbitration.[21]  In other words,

Progrexion asks the court to consider its Motion to Compel Arbitration before considering its

---

[19] Dkt. 21.  Those plaintiffs are: (1) Brett Barrett, (2) Aja Chatmon, (3) Gary Goulding, and (4) Mark Weimer.
Progrexion's Motion to Dismiss also moves to dismiss the claims of a fifth plaintiff, Haley Whittaker.  In its Reply
memorandum, however, Progrexion withdrew its Motion to Dismiss with respect to Whittaker.  Dkt. 45 at 3.  Thus,
the court denies as moot Progrexion's Motion to Dismiss with respect to Whittaker.

[20] Dkt. 20 at 8 n.1.  Those plaintiffs are: (1) Andrew Amuso, (2) Brett Barrett, (3) Justin Bennett; (4) Kyle Bennett,
(5) Cristin Born, (6) Kaisha Bowens, (7) Aja Triana (Chatmon), (8) Jessica Chauhan, (9) Nicole Cook, (10)
Michelle Doolittle, (11) Edwin Edwards, (12) Gary Goulding, (13) Christopher Harper, (14) Kimberly Hilterbran,
(15) Robin Hinkle, (16) James Holt, (17) Shannell Jackson, (18) LaDonna Lee, (19) Justin Lewis, (20) Joseph
Linsmeier, (21) Matthew Lundell, (22) Ricardo Madison, (23) Kayla McNeal, (24) Kristen Murphy, (25) Gary
Preston, (26) Janet Robertson, (27) Robin Robinson, (28) Dulce Small, and (29) Alexis White.  The three plaintiffs
named in both the Motion to Dismiss and the Motion to Compel Arbitration are: Brett Barrett, Aja Chatmon, and
Gary Goulding.

[21] Dkt. 20 at 1 n.1 ("Progrexion files this motion to dismiss subject to its pending motion to compel certain plaintiffs
to arbitration ('Motion to Compel Arbitration').  In the event that the Court declines to compel Brett Barrett, Gary
Goulding, or Aja Triana (Chatmon) to arbitration, then Progrexion asserts this motion to dismiss for lack of subject
matter jurisdiction.").

Motion to Dismiss.  But because Progrexion asserts a challenge to subject matter jurisdiction, the court must address the Motion to Dismiss before it can determine whether those three Untimely Plaintiffs must be compelled to arbitration.  Indeed, if the court lacks subject matter jurisdiction over the claims of these three Untimely Plaintiffs, then the court lacks jurisdiction to compel them to arbitration.  Thus, the court begins with Progrexion's Motion to Dismiss.

Progrexion argues the court must dismiss the Untimely Plaintiffs' claims because they are untimely under the FLSA's three-year statute of limitations.[22]  According to Progrexion, all four Untimely Plaintiffs stopped working for Progrexion more than three years before the date they opted-in to this lawsuit.[23]  Thus, Progrexion argues, the court lacks subject matter jurisdiction over these claims because they are untimely.[24]

Plaintiffs respond that Progrexion's Motion to Dismiss, though styled as a Rule 12(b)(1) motion asserting lack of subject matter jurisdiction, is properly considered as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.[25]  The court agrees.

Progrexion cites to no binding authority for the proposition that its Motion to Dismiss should be construed as a Rule 12(b)(1) motion.  Instead, Progrexion cites only to a Tenth Circuit case discussing the Federal Tort Claims Act[26] and a case from the Court of Federal Claims that applied Rule 12(b)(1) in an FLSA case.[27]  The court is not persuaded by either case.

---

[22] *See* dkt. 21 at 5–6.  The FLSA generally provides for a two-year statute of limitations.  29 U.S.C. § 255(a).  Cases arising out of a "willful violation," however, are subject to a three-year limitations period.  *Id.*  For purposes of this Motion only and without admitting fault, Progrexion argues the Untimely Plaintiffs' claims are untimely even if the court evaluates them under the three-year period for willful violations.  Dkt. 21 at 4 n.3.

[23] Dkt. 21 at 5.

[24] Dkt. 21 at 6.

[25] Dkt. 35 at 3–4.

[26] *Barnes v. United States*, 776 F.3d 1134 (10th Cir. 2015).

[27] *Leggitte v. United States*, 104 Fed. Cl. 315 (Fed. Cl. 2012).

In *Barnes*, the Tenth Circuit held that the Federal Tort Claims Act's statute of limitations period was "jurisdictional" and therefore a motion to dismiss premised on untimeliness should be evaluated under Rule 12(b)(1).[28]  But the *Barnes* court made clear that its analysis was limited to the limitations period contained in the Federal Tort Claims Act.[29]  And more importantly, the Supreme Court has since held that the Federal Tort Claims Act's limitations period is not a jurisdictional requirement and is subject to equitable tolling.[30]  Thus, *Barnes* is of no import here.

*Leggitte* is similarly unpersuasive.  In addition to being a non-binding decision, *Leggitte*[31] does not address whether Rule 12(b)(1) or Rule 12(b)(6) governs this type of motion.[32]  Instead, the court simply accepted the defendant's characterization of the motion as a Rule 12(b)(1) motion.[33]  Thus, *Leggitte*'s persuasive value is minimal.

In contrast, courts in this Circuit regularly construe timeliness challenges to FLSA claims under Rule 12(b)(6).[34]  Further, courts in this Circuit regularly consider equitable tolling arguments when a defendant challenges the timeliness of an FLSA claim.[35]  This informs the court's analysis here because "such doctrines as equitable tolling and equitable estoppel ordinarily would not apply if statutory filing deadlines are jurisdictional."[36]  Taken together, the

---

[28] *Barnes*, 776 F.3d at 1143–48.

[29] *See id.*

[30] *United States v. Kwai Fun Wong*, 575 U.S. 402, 412 (2015).

[31] *Leggitte*, 104 Fed. Cl. at 317.

[32] *See id.*

[33] *See id.*

[34] *See, e.g.*, *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018).

[35] *See, e.g.*, *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178 (D. Colo. 2012); *Johnson v. Acad. Mortg. Co.*, No. 2:12-cv-276 TS, 2012 WL 3886098 (D. Utah Sept. 6, 2012).

[36] *Barnes*, 776 F.3d at 1144.

court concludes Progrexion's Motion to Dismiss should be construed as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.

Because a Rule 12(b)(6) motion does not challenge the court's subject matter jurisdiction, the court accedes to Progrexion's request to consider its Motion to Compel Arbitration before considering its Motion to Dismiss.

## II. MOTION TO COMPEL ARBITRATION

Progrexion moves the court to compel the Arbitration Plaintiffs to arbitration. Plaintiffs raise two primary arguments in opposition to the Motion to Compel Arbitration. First, Plaintiffs argue Progrexion has waived its right to arbitration through its litigation conduct. Second, Plaintiffs argue the Agreement's fee-shifting provision is unconscionable and renders the Agreement unenforceable. Progrexion replies that both of these issues should be decided by the arbitrator. As explained below, the court concludes the question of waiver is for the court to decide, but the question of unconscionability is for the arbitrator to decide. The court further finds that Progrexion has not waived its right to arbitration and therefore the Arbitration Plaintiffs must arbitrate their claims.

Plaintiffs also argue that Chatmon and Chauhan are not bound by the Agreement because their electronic signature was not affixed to the Agreement during their onboarding. The court concludes that even though Chatmon and Chauhan did not electronically sign the Agreement, they are nonetheless bound by its terms and must arbitrate their claims.

Finally, Progrexion asks the court to compel the Arbitration Plaintiffs to individual arbitration and dismiss their claims. The court concludes the question of whether the claims must be arbitrated individually or as a class is one for the arbitrator to decide. The court further concludes dismissal of the Arbitration Plaintiffs' claims is appropriate here.

A. Legal Standard

Arbitration agreements are governed by the Federal Arbitration Act (FAA).  The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[37]  As the Supreme Court has explained, this provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'"[38]  Thus, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."[39]  The FAA "authorizes a court that otherwise has subject matter jurisdiction to compel arbitration."[40]

B. Delegation of Decision-Making Between Court and Arbitrator

Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[41]  So while the Supreme Court has endorsed a liberal policy favoring arbitration, it has also "made clear there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, i.e., the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"[42]  The Supreme Court has contrasted "questions of arbitrability" with what it calls "procedural questions," "which grow out of the dispute and bear on its final disposition."[43]  Unlike questions of arbitrability, procedural questions are

---

[37] 9 U.S.C. § 2.

[38] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

[39] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

[40] *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (citing 9 U.S.C. § 4).

[41] *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002).

[42] *Id.* (citation omitted).

[43] *Id.* at 84 (citation omitted) (internal quotation marks omitted).

"presumptively *not* for the judge, but for an arbitrator to decide."[44]  This division of labor between court and arbitrator seeks to "align[] [the] decisionmaker with [the] comparative expertise" required to resolve the issue and "help[s] better secure a fair and expeditious resolution of the underlying controversy."[45]

The roadmap, then, is as follows: Procedural questions are for the arbitrator to decide. Questions of arbitrability are for the court to decide.  The parties may, however, delegate questions of arbitrability to the arbitrator, so long as they do so "clearly and unmistakably."[46]

The distinction between questions of arbitrability and procedural questions can be a difficult one to draw.  The Supreme Court has explained that the term "questions of arbitrability" has a "limited scope" and

> applies in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.[47]

In contrast, the Supreme Court has held that the phrase "procedural question" applies in situations "where parties would likely expect that an arbitrator would decide the gateway matter,"[48] including "issues related to 'waiver, delay,' or 'whether a condition precedent to arbitrability has been fulfilled.'"[49]

---

[44] *Id.*

[45] *Id.* at 85.

[46] *Id.* at 83.

[47] *Id.* at 84.

[48] *Id.*

[49] *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1244 (10th Cir. 2018) (citation omitted).

Plaintiffs advance two primary arguments in opposition to Progrexion's Motion.  First, Plaintiffs argue Progrexion has waived its right to arbitration through its litigation conduct.[50] Second, Plaintiffs argue the Agreement's fee-shifting provision is unconscionable and violates the effective vindication doctrine.[51]  Progrexion responds that both of these issues should be submitted to the arbitrator.[52]  Specifically, Progrexion argues waiver by litigation conduct presents a procedural question for the arbitrator[53] and unconscionability presents a question of arbitrability, but one that the parties clearly and unmistakably delegated to the arbitrator.[54]  Thus, the court must first decide whether these issues are presumptively for the court or the arbitrator to decide.

<u>i. Waiver by Litigation Conduct Is Presumptively for the Court to Decide</u>

Whether waiver by litigation conduct is presumptively for the court or the arbitrator to decide is a difficult question to answer.  Indeed, neither the Supreme Court nor the Tenth Circuit has directly decided the issue.  Both courts, however, have issued guidance relevant to the court's decision here.

As noted above, the Supreme Court in *Howsam* explained that "the presumption is that the arbitrator should decide 'allegation[s] of *waiver*, delay, or a like defense to arbitrability.'"[55] At first blush, the Court's reference to "waiver" would seem to end the inquiry.  Indeed, Progrexion argues as much.[56]  But a closer look reveals a more complicated picture.

---

[50] Dkt. 36 at 5–7.

[51] Dkt. 36 at 7–9.

[52] Dkt. 44 at 5–7.

[53] Dkt. 44 at 5–6.

[54] Dkt. 44 at 6–7.

[55] *Howsam*, 537 U.S. at 84 (emphasis added).

[56] *See* dkt. 44 at 5.

In *Howsam*, the plaintiff chose to arbitrate before the National Association of Securities Dealers (NASD).[57]  In doing so, the plaintiff signed an agreement specifying that "the present matter in controversy was submitted for arbitration in accordance with the NASD's Code of Arbitration Procedure."[58]  Relevant there, the NASD's Code required that any disputes be submitted within "six (6) years . . . from the occurrence or event giving rise to the . . . dispute."[59]  After the plaintiff submitted the dispute to arbitration, the defendant filed a lawsuit in federal court asking the court to rule that the dispute was ineligible for arbitration because the six-year NASD time limitation had elapsed.[60]  Thus, the threshold question for the Supreme Court was "whether a court or an arbitrator primarily should interpret and apply this particular NASD rule."[61]  The Court concluded it was a matter for the arbitrator.[62]

This factual background is important to understand because it has influenced how many courts—including the Tenth Circuit—have since interpreted *Howsam*.  Perhaps most instructive is the Tenth Circuit's opinion in *Pre-Paid Legal Services v. Cahill*.[63]

In *Cahill*, the plaintiff filed an action in federal court asserting a number of causes of action against the defendant.[64]  The defendant moved to stay the district court proceedings pending arbitration, and the court granted the motion.[65]  As a result, the plaintiff initiated arbitration proceedings before the American Arbitration Association (AAA) and paid its share of

---

[57] *Howsam*, 537 U.S. at 82.

[58] *Id.* (citation omitted) (internal quotation marks omitted).

[59] *Id.* at 81.

[60] *Id.* at 82.

[61] *Id.*

[62] *Id.*

[63] 786 F.3d 1287 (10th Cir. 2015).

[64] *Id.* at 1288.

[65] *Id.*

the AAA arbitration fees.[66]  The defendant, however, failed to pay his share of the fees.[67]  The AAA warned the defendant that it would suspend arbitration if he failed to pay his fees.[68]  The defendant continued to not pay his fees, and the AAA suspended the arbitration proceedings.[69]  After suspending the arbitration, the AAA warned the parties that it would terminate the proceedings if the fees were not received by a certain date.[70]  The defendant again failed to pay his fees, and the AAA terminated the proceedings.[71]  The plaintiff then moved to lift the stay, which the district court granted over the defendant's objection.[72]  The question before the Tenth Circuit was whether it was permissible for the district court to lift the stay.

Relevant here, the Tenth Circuit analyzed whether the district court's decision to lift the stay was permissible under § 3 of the Federal Arbitration Act, which does not require a stay of a federal action if the applicant is "in default in proceeding with [the] arbitration."[73]  Citing *Howsam*, the defendant argued the question of whether he was in "default" under § 3 was reserved for the arbitrator.[74]

The Tenth Circuit rejected this argument, stating that "*Howsam* is distinguishable."[75]  The *Cahill* court noted that *Howsam* "dealt with an NASD rule about time limits, not default under § 3 of the FAA" and "the time limit was part of the arbitrator's own rules and not

---

[66] *Id.*

[67] *Id.*

[68] *Id.* at 1289.

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.* at 1294 (quoting 9 U.S.C. § 3).

[74] *Id.* at 1295.  Although the AAA terminated the arbitration proceedings based on the defendant's nonpayment of fees, the arbitrator did not make a formal finding of default under § 3 when it terminated the proceedings.

[75] *Id.*

contained in a federal statute like § 3."[76]  The court recited *Howsam*'s statement that "NASD arbitrators, as compared to judges, [were] 'comparatively more expert about the meaning of their own rule, [and] [were] comparatively better able to interpret and to apply it,'" before concluding the parties in *Cahill* likely would have expected a court to decide the meaning of "default" under a federal statute.[77]

 *Cahill* is instructive here for at least two reasons.  First, *Cahill* instructs that *Howsam*'s language referencing "waiver" should be read more narrowly than Progrexion suggests. Although *Howsam* references "waiver" as an issue presumptively for the arbitrator, the court does not understand the reference to extend to waiver by litigation conduct.  *Howsam* did not involve the type of waiver at issue here—waiver by litigation conduct—but instead dealt with the NASD's own time limit rules.  Indeed, the reference to "waiver" appears alongside references to "time limits" and "delay," suggesting the Court's discussion of waiver was more likely related to waiver based on failure to satisfy certain NASD rules than waiver based on litigation conduct. This context coupled with the Tenth Circuit's own limited reading of *Howsam* in *Cahill* leads the court to reject Progrexion's broad reading of *Howsam*.

 Second, *Cahill* instructs that a primary import of *Howsam* is that decision-making responsibility should be presumptively allocated between the court and the arbitrator in a way that aligns the dispute with the decisionmaker best suited to resolve the dispute.  For example, because *Howsam* involved the interpretation of the NASD's own rules, the NASD arbitrator was best-suited to resolve that dispute.  Here, the court finds it is better suited than the arbitrator to

---

[76] *Id.*

[77] *Id.* (quoting *Howsam*, 537 U.S. at 85 (second alteration in original)).  The *Cahill* court also cited favorably to *Marie v. Allied Home Mortg. Corp.*, a case in which the First Circuit held that "*Howsam* . . . did not intend to disturb the traditional rule that waiver by conduct, at least where due to litigation-related activity, is presumptively an issue for the court."  402 F.3d 1, 14 (1st Cir. 2005).

determine whether Progrexion has waived its right to arbitration through its litigation conduct. Much like the arbitrator is in the best position to evaluate compliance with its own rules, the court is in the best position to determine whether a party's litigation conduct constitutes a waiver of its right to arbitration. Indeed, Progrexion's litigation conduct takes place before the court, not the arbitrator.

Because *Cahill* instructs that *Howsam* should not be read as broadly as Progrexion suggests, and because both *Howsam* and *Cahill* instruct that issues should be presumptively decided by the decisionmaker best suited to decide the issue, the court concludes waiver by litigation conduct is presumptively for the court to decide.[78]

---

[78] Almost every circuit court that has addressed this issue has reached the same conclusion. *See Marie*, 402 F.3d at 14 ("The proper presumption in this case is that the waiver issue is for the court and not the arbitrator."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–218, 221 (3d Cir. 2007) ("[W]e hold that waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide in the wake of *Howsam* and *Green Tree*."); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008) ("[W]e conclude that *Howsam* did not disturb the traditional rule that the courts presumptively resolve waiver-through-inconsistent-conduct claims."); *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) ("Today we conclude that it is presumptively for the courts to adjudicate disputes about whether a party, by earlier litigating in court, has waived the right to arbitrate."); *but see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003) (holding that the arbitrator presumptively should decide if a party has waived the right to arbitration by litigation conduct in state court).

Additionally, the Tenth Circuit has on several occasions ruled on the issue of waiver by litigation conduct since *Howsam* was decided, suggesting—at least implicitly—that the issue is presumptively for the courts. *See BOSC*, 853 F.3d at 1169 (reviewing district court's decision on issue of waiver by litigation conduct); *In re Cox Enters. Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115–16 (10th Cir. 2015) (same).

### ii. Unconscionability Is Presumptively for the Court to Decide

The issue of unconscionability is simpler.  Both parties seem to agree the issue presents a question of arbitrability that is presumptively for the court to decide.[79]  The court agrees.[80]

### iii. Whether the Parties Agreed to Submit Waiver and Unconscionability to the Arbitrator

Because both issues present questions presumptively for the court, the question now becomes whether the parties have clearly and unmistakably agreed to sunmit these issues to the arbitrator.  Progrexion argues the parties have done so here because the Agreement incorporates the AAA Rules, which provide in relevant part: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[81]  The court finds the parties clearly and unmistakably agreed to submit the issue of unconscionability to the arbitrator but have not done so with respect to the issue of waiver by litigation conduct.

The Tenth Circuit's opinion in *Dish Network* is instructive on this issue.  In *Dish Network* the parties to an arbitration agreement disagreed about whether the agreement permitted classwide arbitration.[82]  The arbitration agreement at issue incorporated the AAA Rules.[83]  A

---

[79] Plaintiffs ask the court to declare the fee-shifting agreement to be unconscionable, *see* dkt. 36 at 7–9, and Progrexion argues that unconscionability is a question of arbitrability the parties have delegated to the arbitrator in the Agreements, *see* dkt. 44 at 12–14.

[80] Numerous courts have reached the same conclusion, holding that unconscionability—and by extension, validity and enforceability—presents a question of arbitrability presumptively for the court to decide.  *See, e.g., Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) ("[T]he parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement."); *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1287 (D. Utah 2017) ("Typically speaking, questions of arbitrability—such as whether an agreement is valid or enforceable, or whether a concededly binding agreement covers a particular dispute—are 'undeniably' for the courts to decide."); *cf. Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 78 (2010) (Stevens, J., dissenting) ("Two different lines of cases bear on the issue of *who* decides a question of arbitrability respecting validity, such as whether an arbitration agreement is unconscionable.").

[81] Dkt. 44 at 2 n.3.

[82] 900 F.3d at 1242.

[83] *Id.*

necessary antecedent to the question of classwide arbitration was determining whether that question was for the court or the arbitrator to decide.[84]  On appeal, the Tenth Circuit held that "when contracting parties incorporate the AAA rules into a broad arbitration agreement . . . such an incorporation clearly and unmistakably evinces their intent to arbitrate arbitrability."[85]  Thus, the *Dish Network* court concluded the parties had clearly and unmistakably agreed to delegate the question of classwide arbitration to the arbitrator.[86]

Against this backdrop, the court finds the parties clearly and unmistakably agreed to submit the issue of unconscionability to the arbitrator.  As noted above, the Agreement incorporates the AAA Rules, which provide that "[t]he arbitrator shall have the power to rule on . . . any objections with respect to the existence, scope or *validity of the arbitration agreement*."[87] Plaintiffs argue the Agreement's fee-shifting provision is "substantively unconscionable" and therefore the Agreement is void.[88]  In other words, Plaintiffs challenge the validity of the Agreement.  Because the Agreement incorporates the AAA Rules, and because the AAA Rules explicitly delegate objections concerning the validity of an arbitration agreement to the arbitrator, the court concludes the parties have agreed to submit this issue to the arbitrator.

The court reaches the opposite conclusion, however, with respect to the issue of waiver by litigation conduct.  Although the AAA Rules provide that the arbitrator shall rule on objections concerning the "existence, scope or validity" of the Agreement, the AAA Rules do not vest the arbitrator with the power to rule on whether the right to arbitration can be waived by

---

[84] *See id.* at 1245.

[85] *Dish Network*, 900 F.3d at 1246.

[86] *Id.* at 1248.

[87] AAA Rules, at § 6(b), available at: https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf (emphasis added).

[88] Dkt. 36 at 8–9.

litigation conduct.  Whether Progrexion has waived its right to arbitration through its litigation conduct is an inquiry separate and distinct from questions concerning the "existence, scope or validity" of the Agreement.  The waiver question presupposes that there exists a valid arbitration agreement that covers the dispute.  Indeed, in the absence of such an agreement there would be no need to determine whether the right to arbitration was waived because there would be no right to arbitration in the first instance.  Thus, while the parties have clearly and unmistakably evinced an intent to submit questions regarding the validity of the Agreement to the arbitrator, they have not clearly and unmistakably evinced an intent to submit questions of waiver by litigation conduct to the arbitrator.  Accordingly, the court must decide whether Progrexion has waived its right to arbitration through its litigation conduct.[89]

### C. Progrexion Has Not Waived Its Right to Arbitration

"It is axiomatic that 'the right to arbitration, like any other contract right, can be waived.'"[90]  Courts in the Tenth Circuit use a six-factor test to determine whether the right to arbitrate has been waived.[91]  The six factors the court must consider are:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party

---

[89] Other courts that have considered this issue have reached the same conclusion.  *See, e.g.*, *LeBlanc v. Halliburton Energy Servs., Inc.*, Civ. No. 17-718 KG/GJF, 2020 WL 1275645, at *4 (D.N.M. Mar. 17, 2020) ("Here, while the parties have agreed to arbitrate issues relating to the scope, enforceability, and validity of the arbitration agreements, the agreements do not address waiver pursuant to litigation conduct.  Therefore, even assuming the issue of waiver by litigation conduct could be delegated to an arbitrator, the arbitration agreements do not clearly and unmistakably agree to arbitrate that issue."); *see also Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) ("In the present case, the provision regarding the scope of the arbitration agreement—'[a]ll determinations as to the scope, enforceability and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court'—is far less broad than the provision in *Cox*, because it does not contain the all inclusive 'arising out of or related to' language.  The language in the arbitration contract before us is therefore *a fortiori* insufficient to show an intent that an arbitrator decide the waiver by litigation conduct issue and to overcome the presumption to the contrary."); *Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App. Ft. Worth 2009) ("[A] general reference in the arbitration agreement to the AAA rules, without more, does not clearly and unmistakably manifest [the] parties' intent to refer the issue of waiver by litigation conduct to the arbitrator.").

[90] *In re Cox*, 790 F.3d at 1115 (citation omitted).

[91] *Id.*

of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.[92]

In evaluating these factors, the court "do[es] not apply a 'mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails.'"[93]  Instead, "these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration."[94]  The court's focus is on preventing parties from "play[ing] fast and loose with judicial machinery and deceiv[ing] the courts" and, thus, "[a]n important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process."[95]

Here, Plaintiffs argue Progrexion waived its right to arbitration by delaying its production of certain arbitration agreements after mediation failed in November 2019.[96]  Plaintiffs argue Progrexion's delay in producing certain agreements has caused Plaintiffs significant prejudice and is inconsistent with the right to arbitrate.[97]  Progrexion responds that it has been consistent in its position that the Arbitration Plaintiffs must arbitrate and that the Arbitration Plaintiffs have not been prejudiced by any delay.[98]

---

[92] *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir. 1988) (citation omitted) (internal quotation marks omitted).

[93] *In re Cox*, 790 F.3d at 1116 (citation omitted).

[94] *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 773 (10th Cir. 2010).

[95] *In re Cox*, 790 F.3d at 1116 (citations omitted) (internal quotation marks omitted).

[96] Dkt. 36 at 6.

[97] Dkt. 36 at 7.  It is unclear whether *prelitigation* conduct is relevant to the court's waiver determination under Tenth Circuit precedent, which seems primarily concerned with *litigation* conduct.  But even assuming it is, the court concludes Progrexion has not waived its right to arbitration.

[98] Dkt. 44 at 8–10.

The court concludes Progrexion has not waived its right to arbitrate.  The court agrees with Progrexion that it has consistently sought arbitration of the Arbitration Plaintiffs' claims. Following mediation in November 2019, Progrexion produced 61 arbitration agreements over the span of about one month.[99]  In the months since, Progrexion has produced an additional 36 arbitration agreements.[100]  Though it took Progrexion five months to produce certain agreements, the court does not view the delay associated with some agreements as evincing an intent to deceive the courts or manipulate the judicial process.  Indeed, it is the court's understanding that all outstanding arbitration agreements were produced by the time Progrexion filed this Motion.[101] And Progrexion has promptly sought to compel arbitration in this action.  Further, the court does not find that the Arbitration Plaintiffs have been prejudiced by Progrexion's delay in producing some agreements—especially in light of Plaintiffs' failure to identify any prejudice themselves.[102]  Taken together, the court concludes the facts of this case do not support a finding of waiver by litigation conduct.[103]

---

[99] Dkt. 44 at 9.

[100] Dkt. 44 at 9.

[101] *See* dkt. 36 at 3 ("Progrexion produced those outstanding arbitration agreements, for the first time, when it filed its Motion to Compel Arbitration on April 19, 2019.").

[102] In their Opposition, Plaintiffs state in conclusory fashion, "[Progrexion's] six-month delay in producing those agreements has caused Plaintiffs significant prejudice." Dkt. 36 at 7.  But Plaintiffs never explain what the "significant prejudice" is.

[103] Plaintiffs also argue Progrexion "breached the agreement to arbitrate when it refused to produce the arbitration agreements at issue." Dkt. 36 at 6.  This argument seems to be closely related to, if not subsumed by, Plaintiffs' waiver argument.  *See* dkt. 36 at 9 ("Plaintiff contend that Progrexion's failure to provide the arbitration agreements at issue . . . constituted a breach of the arbitration agreement such that Progrexion waived any rights to compel arbitration.").  To the extent the breach argument is different than the waiver argument, Plaintiffs have cited no case law—let alone binding case law—suggesting that a delay in producing arbitration agreements amounts to a breach of the agreement to arbitrate.  Instead, the cases Plaintiffs cite concern defendants who declined to arbitrate by refusing to pay their share of the arbitration filing fee after a valid arbitration proceeding had been initiated.  *See Cahill*, 786 F.3d at 1294 (defendant refusing to pay filing fee and participate in properly initiated arbitration proceeding); *Brown v. Dillard's Inc.*, 430 F.3d 1004 (9th Cir. 2005) (same); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003) (same); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) (same).  As a result, the court declines to find Progrexion has breached any agreement to arbitrate here.

### D. Chatmon and Chauhan Must Arbitrate Their Claims

As Progrexion explains in its Motion, two plaintiffs—Aja Chatmon and Jessica Chauhan—reviewed the Agreement during the onboarding process, but the onboarding software does not show them as having signed the Agreement.[104]  While the onboarding software shows that both Chatmon and Chauhan completed all of their onboarding tasks, including signing the Agreement, the Agreements for Chatmon and Chauhan have an unchecked "employee signature" box.[105]  Progrexion argues Chatmon and Chauhan are bound by the Agreement.[106]  Plaintiffs respond that Progrexion has "not met its burden of proof" to show that Chatmon and Chauhan executed the Agreements.[107]  Thus, the question is whether Chatmon and Chauhan are bound by the Agreements even though their electronic signature does not appear on the Agreements.

The court must first determine which state's law applies here.[108]  Chatmon and Chauhan both worked for Progrexion in Oklahoma.[109]  Progrexion argues Oklahoma law applies. Plaintiffs are silent on this issue but do not dispute Progrexion's assertion.  While the Agreement contains a choice-of-law provision stating the Agreement shall be governed by Utah law, the court cannot give effect to that provision unless and until it determines Chatmon and Chauhan are bound by the Agreement.  In other words, the court must determine whether a binding contract exists in the first instance.

---

[104] Dkt. 20 at 13–14.

[105] Dkt. 20 at 13.

[106] Dkt. 20 at 23.

[107] Dkt. 36 at 4 n.5.

[108] *See Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) ("Generally, courts "should apply ordinary state-law principles that govern the formation of contracts" to determine whether a party has agreed to arbitrate a dispute.").

[109] Dkt. 20 at 23.

Because the court's jurisdiction is rooted in a federal question, it applies federal common law choice-of-law principles.[110]  And the "[f]ederal common law follows the approach outlined in the Restatement (Second) of Conflict of Laws."[111]  The Restatement provides, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties . . . ."[112]  The Restatement further provides that courts employing the most significant relationship test should take into account: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."[113]  Taking these factors into consideration, the court concludes Oklahoma—the state in which Progrexion employed Chatmon and Chauhan—has the most significant relationship to the issue of whether Chatmon and Chauhan are bound by the Agreement and therefore Oklahoma law governs whether Chatmon and Chauhan are bound by the Agreement.[114]

---

[110] *Ellis v. Liberty Life Assurance Co. of Boston*, 958 F.3d 1271, 1283 (10th Cir. 2020) ("The general rule is that federal choice-of-law principles are used in resolving federal causes of action.").

[111] *In re Kimball*, 561 B.R. 861, 865 (Bankr. W.D. Okla. 2016); *cf. Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1202–03 (10th Cir. 1990) (adopting Restatement (Second) of Conflict rule as means of determining which state's law applies when the federal statute did not specify a limitations period).

[112] Restatement (Second) of Conflict of Laws § 188 (Am. Law. Inst. 1971).

[113] *Id.*

[114] To the extent this issue could be considered a pendent state law claim—and therefore the choice-of-law rules of the forum state would govern—the court would still look to the most significant relationship test because Utah courts also apply that test in contract disputes.  *Am. National Fire Ins. Co. v. Farmers Ins. Exchange*, 927 P.2d 186, 190 (Utah 1996) ("We agree and hold that the most significant relationship test as explained in Restatement of Conflict section 188 is the appropriate rule for Utah courts to apply to a conflict of laws question in a contract dispute.")  Thus, the result is the same whether the court employs federal choice-of-law principles or Utah choice-of-law principles.

Progrexion has provided unrebutted evidence that Chatmon and Chauhan reviewed the Agreement during the onboarding process.[115]  And while their signatures were not affixed to the Agreement during the onboarding process, Oklahoma law does not require such formalistic execution of a contract.  "Although the Oklahoma Uniform Arbitration Act (OUAA) requires that arbitration agreements be contained in a record, and the Federal Arbitration Act (FAA) requires that arbitration agreements be written, neither Act requires arbitration agreements to be signed."[116]  As a result, "acceptance of an arbitration agreement may be shown by acts, conduct, or acquiescence to the terms of the contract."[117]  Relevant here, Oklahoma law provides that "[p]erformance of the conditions of a proposal, *or the acceptance of the consideration offered with a proposal*, is an acceptance of the proposal."[118]  Further, "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known to the person accepting."[119]  Thus, as the Tenth Circuit explained in *Hardin v. First Cash Financial Services, Inc.*—a case in which the Court interpreted Oklahoma law—an employee's continued employment can "manifest[] her assent to be bound by the terms of [an] arbitration agreement."[120]

Here, the Agreement provides that "each party's promise to resolve claims by arbitration . . . is consideration for other party's like promise" and that "Employee further understands that

---

[115] Dkt. 20-1 at 5–6.  Plaintiffs do not dispute any of the evidence proffered by Progrexion in supports of its Motion. Instead, Plaintiffs summarily respond in a footnote, "Plaintiffs note that Progrexion failed to produce executed arbitration agreements for Plaintiffs Chauhan and Aja [Chatmon]. Plaintiffs dispute that those agreements were executed by Plaintiffs and contend that Progrexion has not met its burden of proof for those individuals."  Dkt. 36 at 4.

[116] *Dunbar Engineering Corp. v. Rhinosystems, Inc.*, 232 P.3d 931, 935 n.9 (Okla. Civ. App. 2010).

[117] *Id.*

[118] Okla. Stat. tit. 15, § 70 (emphasis added).

[119] Okla. Stat. tit. 15, § 75.

[120] 465 F.3d 470, 478 (10th Cir. 2006).

he or she is offered employment and continued employment in consideration of his or her promise to arbitrate all relevant employment-related disputes and/or claims."[121]  By reviewing the Agreement and accepting the consideration offered therein—employment with Progrexion— Chatmon and Chauhan accepted the Agreement's arbitration terms.  Accordingly, Chatmon and Chauhan are bound by the Agreement and their disputes must be submitted to arbitration.

### E. Individual vs. Class Arbitration

Having concluded that the Arbitration Plaintiffs must arbitrate their claims, the court now turns to Progrexion's argument that the Agreement contains a class arbitration waiver and therefore the court should compel individual arbitration as to each plaintiff.[122]  Plaintiffs do not address this issue in their Opposition.

Progrexion asserts—without direct citation to legal authority—that the arbitrator is not permitted to decide whether class arbitration is available and the determination must instead be made by the court.[123]  Progrexion seems to base this assertion on Supreme Court caselaw explaining that parties may not be compelled to submit to class arbitration unless there is a contractual agreement to do so.[124]  While the law may require the parties to agree to class arbitration, the cases cited by Progrexion do not forbid an arbitrator from deciding whether such an agreement exists.  Indeed, in one of the cases cited by Progrexion it was the arbitrator who made the initial determination concerning whether the arbitration clause in a contract allowed for

---

[121] *See*, *e.g.*, dkt. 20-1 at 18.

[122] Dkt. 20 at 28.  The Agreement provides in relevant part: "Employee and Employer agree that each may bring controversies, claims, or disputes against the other only in his/her/its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding."  *See*, *e.g.*, dkt. 20-1 at 18.

[123] Dkt. 20 at 28.

[124] *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

class arbitration—not the court.[125]  In light of the parties' incorporation of the AAA Rules—which delegate to the arbitrator questions relating to the scope of an arbitration agreement—into the Agreement here, the court concludes this issue is for the arbitrator.  Whether the parties agreed to permit class arbitration speaks directly to the scope of the Agreement.  And the parties have clearly and unmistakably delegated issues concerning the scope of the Agreement to the arbitrator.  Thus, whether the parties have agreed to class arbitration is properly submitted to the arbitrator.

### F. Plaintiffs' Claims Are Dismissed

Progrexion argues the court, having compelled the Arbitration Plaintiffs to arbitration, should dismiss the Arbitration Plaintiffs' claims.[126]  Plaintiffs do not address this issue in their Opposition.[127]  Because neither party has requested that the court stay proceedings pending arbitration, the court concludes dismissal of the Arbitration Plaintiffs' claims is appropriate here.[128]

---

[125] *Id.* at 669.

[126] Dkt. 20 at 29.

[127] In their Opposition, Plaintiffs ask the court to equitably toll their respective statutes of limitation in the event the court compels arbitration.  Dkt. 36 at 9.  And Plaintiffs have since filed a separate Motion for Equitable Tolling.  Dkt. 57.  Whether any claims are equitably tolled, however, does not affect the court's analysis concerning whether to dismiss the Arbitration Plaintiffs' claims.  Regardless of whether the claims are tolled, the only question is whether the court compelling arbitration also requires it to dismiss those claims.  That is, the question of dismissal is linked to the issue of arbitration, not the issue of timeliness or tolling.

[128] *See Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (explaining that a district court may dismiss claims if neither party has requested a stay pursuant to 9 U.S.C. § 3).  Progrexion asks the court to stay proceedings in the event the court does not dismiss the Arbitration Plaintiffs' claims.  Dkt. 20 at 29 n.19.  Because this argument is only made in the alternative, the court does not interpret it as a request under § 3 requiring the court to stay proceedings.

## III. PROGREXION'S MOTION TO DISMISS MUST BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT

Having granted Progrexion's Motion to Compel Arbitration, its Motion to Dismiss is now denied as moot with respect to Brett Barrett, Aja Chatmon, and Gary Goulding.[129]  The Motion to Dismiss must still be resolved, however, with respect to Mark Weimer.[130]

Progrexion argues Weimer's claims must be dismissed because they are untimely.[131]  In support of this argument, Progrexion cites to a declaration from Jamie Martinez—a custodian of records with Progrexion—who declares Weimer's last date of employment with Progrexion was on February 6, 2017.[132]  This declaration, however, is a matter outside the pleadings.  Indeed, because Weimer is an opt-in plaintiff, the complaint contains no allegations specific to Weimer.  But the dates of Weimer's employment—and by extension, the court's consideration of the Martinez declaration—are crucial to resolving Progrexion's Motion to Dismiss.  Because Progrexion's Motion to Dismiss requires the court to consider materials outside the pleadings— namely, the Martinez declaration—Rule 12(d) requires the court convert Progrexion's Motion to Dismiss to a motion for summary judgment under Rule 56 and allow the parties to "present all material that is pertinent to the motion."[133]  To that end, Plaintiffs are invited to file an opposition with the court within twenty-eight (28) days of this Order.

---

[129] As explained above, Progrexion asks the court to consider its Motion to Dismiss with respect to Barrett, Chatmon, and Goulding only in the event it does not compel them to arbitration.  Dkt. 21 at 2 n.2.  Because the court compels Barrett, Chatmon, and Goulding to arbitration, the court will not consider Progrexion's Motion to Dismiss as to those three plaintiffs.

[130] Weimer has not been compelled to arbitration in this action.

[131] Dkt. 21 at 5–6.

[132] Dkt. 21-1.

[133] Fed. R. Civ. P. 12(d).

**CONCLUSION**

For the reasons explained above:

1. Progrexion's Motion to Compel Arbitration[134] is GRANTED and the Arbitration

Plaintiffs' claims are DISMISSED;

2. Progrexion's Motion to Dismiss[135] is DENIED as moot with respect to plaintiffs Brett

Barrett, Aja Chatmon, Gary Goulding, and Haley Whittaker.  With respect to plaintiff

Mark Weimer, the court—pursuant to Rule 12(d)—converts the Motion to Dismiss to a

motion for summary judgment under Rule 56.  Plaintiffs are invited to file an opposition

with the court within twenty-eight (28) days of this Order.

**SO ORDERED** this 11th day of August 2020.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[134] Dkt. 20.

[135] Dkt. 21.